864 So.2d 764 (2003)
STATE of Louisiana
v.
Paul FERNANDEZ.
No. 03-KA-987.
Court of Appeal of Louisiana, Fifth Circuit.
December 30, 2003.
*766 Paul D. Connick, Jr., District Attorney, Juliet Clark, Terry M. Boudreaux, Kia Habisreitinger, Assistant District Attorneys, Gretna, LA, for State.
Frank G. DeSalvo, New Orleans, LA, for Defendant-Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SUSAN M. CHEHARDY and CLARENCE E. McMANUS.
CLARENCE E. McMANUS, Judge.
The Jefferson Parish District Attorney filed a bill of information charging defendant, Paul Fernandez, with sexual battery, a violation of LSA-R.S. 14:43.1, for acts allegedly committed on July 29, 2001. Defendant pled not guilty at the arraignment.
The following facts were elicited at trial. S.M. and her husband, along with some friends, were at Studio II Lounge in Jefferson Parish.[1] S.M. was dancing with one of her friends when she felt a man's hand brush her rear end. She looked down and saw a man's hand coming from under her dress. Immediately thereafter, the man put his "full hand" in between her legs. S.M. looked around and saw only one man, later identified as the defendant, near her. S.M. became very upset and told her husband, who was nearby, what had happened. S.M's husband and another friend, Mark Jackson saw the defendant pulling his hand from underneath S.M.'s skirt. S.M's husband became very angry and started to confront the defendant, but S.M. and other friends restrained S.M.'s husband. S.M. then told the disc jockey what had happened, and he recommended that she call the police.
After S.M. went to call the police, Mark, who was a St. Bernard Parish detective, followed defendant into the restroom, where Mark overheard the defendant say that "her husband is no man." Mark testified that he told the defendant that the police were on the way. Deputy Brian Scheyler of the Jefferson Parish Sheriff's Office responded between 3:00 and 4:00 a.m. Deputy Scheyler testified that, after he interviewed the victim, he escorted the defendant outside of the lounge, where Deputy Scheyler handcuffed the defendant. According to Deputy Scheyler, no *767 one came forward to tell a different version of the events on the defendant's behalf. According to the victim's husband, while the defendant was in the police car after he was arrested, the defendant threatened him and told S.M. that he would rape her when he got out of jail.
The defendant and several witnesses testified on his behalf. According to the defendant, he met up with several friends at Studio II. He admitted that he might have accidentally bumped into S.M. while dancing on the crowded dance floor, but denied that he had intentionally reached under her dress. The defendant also said that S.M. bumped into him several times when she was "dancing wildly." The defendant said that he was dancing with Christine Chambers and another girl, Trish, when he noticed that S.M. became angry. The defendant said that he was unaware of any problem until the victim's husband and another man approached him and tried to start a fight.
Christine Chambers testified that she and her sister, Rebecca Castex, had seen the defendant earlier in the evening at Legends lounge. Before leaving Legends, Christine, Rebecca, and the defendant agreed to meet at Studio II. According to Christine, they arrived separately at Studio II between 2:30 and 3:00 a.m. Christine testified that she and a group of three or four girls were dancing in a group with the defendant. Christine said that she saw the defendant as he was escorted out of the lounge, but unaware that he had been arrested. Christine did not see the defendant reach underneath a woman's dress while they were dancing, nor did she see an altercation between the defendant and two men. Rebecca said that she saw the defendant dancing with Christine and other friends, but she did not see anything happen between the victim and the defendant. Both Rebecca and Christine subsequently learned that the defendant had been arrested.
Chris Taylor, the defendant's nephew, and his date, Christina Leslie, were also at Studio II that morning. Both of them saw the defendant dancing with some women. Christina saw a woman become upset, followed by an altercation between the defendant and two men. Chris also saw the altercation, but neither Christina nor Chris saw the defendant reach underneath a woman's skirt.
Finally, Nathan Bares, one of the defendant's co-workers at the Italian Pie, saw the defendant that morning at Studio II. According to Nathan, the defendant was already there when Nathan arrived. The defendant was dancing with Christine at the time, approximately one foot away. Nathan did not see the defendant reach underneath a woman's skirt.
After trial, a six-person jury found defendant guilty as charged on August 20, 2002. On August 27, 2002, the trial judge sentenced defendant to three years at hard labor without benefit of probation, parole, or suspension of sentence.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant claims that the prosecution in closing argument encouraged the jury to convict him because he was a bad person in that he had been previously convicted of a felony. The State responds that the remarks were appropriate because they were in response to the defendant's closing argument.
The defendant complains of the following comments made by the prosecutor during rebuttal:
Defense Counsel wants you to believe that the fact that he's a convicted felon is a plus. He's got a conviction for possession of a schedule two controlled dangerous substance, coke, cocaine, and *768 that's a plus. That's not a plus. He wants you to believe that he came to court before and he pled guilty and therefore he's not guilty this time. This is an experienced individual. This is a man who has come to court. This is a man who has learned to lie. He's already been through the justice system. He's learned to lie. Now, the Judge is going to tell you when he reads the jury instructions in a few moments that you are the sole judge of the weight and credibility of the evidence. you [sic] are the sole individuals who can determine and judge the credibility of the defendant. If you chose not to believe an individual who is inconsistent with all of his witnesses, and who is a convicted drug offender, then you have the right to do that....
The record reflects that the defendant did not object to these remarks. LSA-C.Cr.P. art. 841(A) provides that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." The purpose behind this rule is to put the trial judge on notice of an alleged irregularity so that the problem may be cured by the judge, as well as to prevent the defendant from gambling on a favorable verdict and then resorting to appeal on errors that might easily have been corrected by an objection. State v. Ware, 01-194, p. 14 (La.App. 5 Cir. 8/28/01), 795 So.2d 495, 504.
Nevertheless, this Court has addressed on appeal, a prosecutor's comments in closing argument even in the absence of an objection at trial by the defendant. See, State v. Rochon, 98-717, pp. 5, 9 (La.App. 5 Cir. 3/10/99), 733 So.2d 624, 628, 630. Accordingly, we will address the prosecutor's comments.
LSA-C.Cr.P. art. 774 defines the scope of argument and rebuttal:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant.
Nevertheless, a conviction is not reversed due to improper remarks during closing argument unless the reviewing court is thoroughly convinced that the remarks influenced the jury and contributed to the verdict. State v. Snyder, 98-1078, pp. 17-18 (La.4/14/99), 750 So.2d 832, 846; State v. Rochon, supra, at 630. Further, a prosecutor retains "considerable latitude" when making closing arguments. State v. Snyder, supra, quoting, State v. Taylor, 93-2201, p. 19 (La.2/28/96), 669 So.2d 364, 374, cert. denied, 519 U.S. 860, 117 S.Ct. 162, 136 L.Ed.2d 106 (1996).
In the present case, the defendant admitted on direct examination that he had previously pled guilty to possession of cocaine in 1997. In closing argument, the defense sought to bolster the defendant's credibility by pointing out that he had admitted his guilt in the prior conviction:
And, you know, when Paul Fernandez first testified, what did I ask him? First thing I asked him, didn't you plead guilty to possession of cocaine? So the last time he was in court, he came in and told the judge he was guilty. This time he's telling you he's not guilty because he's not guilty.
According to LSA-C.E. art. 609.1, a defendant's credibility may be tested with evidence of prior convictions when a defendant chooses to testify. See, State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, 99. Accord, State v. Smothers, 02-277, *769 p. 14 (La.App. 5 Cir. 12/30/02), 836 So.2d 559, 568, writ denied, 03-447 (La.10/13/03), 855 So.2d 329. In State v. Davis, 02-2059 (La.App. 4 Cir. 1/22/03), 839 So.2d 176, the court held the prosecutor's reference to the defendant's prior convictions during closing argument was proper, when the defendant testified on his own behalf at trial and admitted his prior convictions at that time.
In this case, the defense invited the jury in closing arguments to infer that the defendant was telling the truth because he had previously admitted his guilt when he pled guilty to possession of cocaine. The prosecutor's comment about the defendant's prior conviction in rebuttal was in response to those remarks.
Even if the prosecutor's comment that the defendant was a "man who has learned to lie" was improper, it does not appear that the remark was so inflammatory or prejudicial as to necessitate reversal. In State v. Burge, 515 So.2d 494, 505 (La.App. 1 Cir.1987), writ denied, 532 So.2d 112 (La.1988), the court held that the implicit characterization of defendant as "scum" by the prosecutor in closing argument, while inadvisable, was not so overwhelmingly inflammatory and prejudicial as to require reversal of the defendant's conviction. The Louisiana Supreme Court has recognized that "much credit should be accorded to the good sense and fairmindedness of jurors who have seen the evidence and heard the arguments, and have been instructed repeatedly by the trial judge that arguments of counsel are not evidence." See, State v. Martin, 93-285, p. 18 (La.10/17/94), 645 So.2d 190, 200, cert. denied, 515 U.S. 1105, 115 S.Ct. 2252, 132 L.Ed.2d 260 (1995). Here, the trial judge instructed the jury that the opening statements and closing arguments of the attorneys were not to be considered as evidence.
Considering the prosecutor's remarks in context, we find that the bulk of the remarks were in response to the defense's closing argument. Further, based on the jurisprudence, the references to the defendant as a "man who has learned to lie" were not so inflammatory as to warrant reversal.
Thus, we find the prosecutor's remarks were proper and we affirm the defendant's conviction of sexual battery.

ASSIGNMENT OF ERROR NUMBER TWO
The defendant contends that his attorney was ineffective in failing to object to the prosecutor's remarks and to move for a mistrial thereafter. The State responds that the defendant was not prejudiced by his attorney's inaction because the prosecutor's remarks were proper.
Although claims of ineffective assistance of counsel are more appropriately addressed through an application for post conviction relief, it appears that this allegation may be readily addressed, since the record contains sufficient evidence to decide the claims. See, State v. Snavely, 99-1223, p. 14 (La.App. 5 Cir. 4/12/00), 759 So.2d 950, 959, writ denied, 00-1439 (La.2/16/01), 785 So.2d 840.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution of 1974. In assessing a claim of ineffectiveness, a two-pronged test is employed. The defendant must show that (1) his attorney's performance was deficient, and (2) the deficiency prejudiced him. To show prejudice as required in order to establish ineffective assistance of counsel, the defendant must demonstrate that, but for counsel's unprofessional conduct, the outcome of the trial would have been different. Strickland v. Washington, *770 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Snavely, supra. A defendant is not entitled to a perfect trial, only a fair one. See, State v. Strickland, 94-25, p. 52 (La. 11/1/96), 683 So.2d 218, 239, citing Bruton v. United States, 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968).
Based on our finding in Assignment of Error Number One that the prosecutor's remarks were proper, we find that the defendant's attorney was not deficient in failing to object and failing to move for a mistrial during the prosecutor's rebuttal.

ASSIGNMENTS OF ERROR NUMBER THREE AND FOUR
In his third assignment, the defendant contends that the trial judge should have declared a mistrial even though defendant did not object to the prosecutor's remarks in closing. In his fourth assignment, the defendant also asserts that the trial judge had a duty to instruct the jury that they could not find defendant guilty merely because he had a conviction for possession of cocaine.
The defendant does not discuss assignment number three in his brief. As for assignment number four, defendant includes two sentences that restate the assigned error, but his brief contains no legal authority for his position. According to Rule 2-12.4 of the Uniform Rules, Courts of Appeal, all specifications or assignments of error must be briefed and the appellate court may consider as abandoned any specification or assignment of error that has not been briefed. Restating an assigned error in brief without argument or citation of authority does not constitute briefing. State v. Inzina, 31,439, p. 19 (La.App. 2 Cir. 12/9/98), 728 So.2d 458, 469. In State v. Bell, 00-1084, p. 6 (La. App. 5 Cir. 2/28/01), 781 So.2d 843, 848, writ denied, 01-776 (La.4/26/02), 813 So.2d 1098, this Court held that the defendant's assignment was abandoned because it was not briefed.
Considering that the defendant merely asserts his position, but fails to include argument or any legal citation in support of the position, we conclude that he has not briefed this position. Thus, it appears that the defendant's assertion presents nothing for our review.
Based on the foregoing, we find that assignments of error numbers three and four have been abandoned.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Two matters are presented for review.
First, it is unclear whether the trial judge gave the defendant notice of the registration requirements for sex offenders as required by LSA-R.S. 15:543(A). Although the minute entry states that the "[d]efendant is to report as a sex offender," the transcript reflects that the trial judge did not specifically tell the defendant to do so. Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983).
LSA-R.S. 15:542 requires that all persons convicted of a sex offense must register with the sheriff of the parish where the person resides. LSA-R.S. 15:543(A) requires the trial court to provide written notification of the registration requirements to the defendant upon judgment and sentencing. This Court has recognized the failure of the trial court to give the notice as an error patent. State v. Stevenson, 00-1296, p. 4 (La.App. 5 Cir. 1/30/01), 778 So.2d 1165, 1166-1167. In Stevenson, this Court remanded the matter and ordered *771 the trial court to inform defendant of the registration requirements of LSA-R.S. 15:542 by sending written notification to the defendant within ten days of the opinion and to file written proof in the record that defendant received such notice.
Immediately before imposing sentence in the present case, the trial judge stated that "[t]he Court also wants Mr. Fernandez to make sure he's aware of the reporting requirements that are applicable in his case with reference to this conviction. Are you aware of those?" The defendant's attorney replied, "When he was discharged, yes, that's correct." We find that this exchange indicates that the defendant was aware of the registration requirements for sex offenders, and we further find that no remedial action is necessary.
Second, the trial judge failed to advise the defendant of the prescriptive period for filing post-conviction relief in accordance with LSA-C.Cr.P. art. 930.8. Therefore, we remand this matter and instruct the trial court to send appropriate written notice to the defendant of the prescriptive period for post-conviction relief, and to file written proof in the record that the defendant received the notice within ten days of the rendering of the opinion. State v. Stelly, 98-578 (La.App. 5 Cir. 12/16/98), 725 So.2d 562.
In accordance with the above, we affirm the defendant's conviction of sexual battery and remand the matter with instructions as discussed above.
CONVICTION AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] As provided by LSA-R.S. 46:1844(W), the sex crime victim is identified by her initials.